UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW HARRISON,

      Plaintiff,

v.

NAPHCARE, WELLPATH, WAYNE
COUNTY, RAPHAEL WASHINGTON,
and FREEMAN,

      Defendants.

_____/

Case No. 4:22-cv-10187
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 68, 69, 73)[1]

I.      Introduction

This is a pretrial detainee civil rights case under 42 U.S.C. § 1983. On June 30, 2023, this case was consolidated with another case filed by plaintiff Matthew Harrison (Harrison): *Harrison v. Wellpath, Wayne County, Freeman, and Raphael Washington*, Case No. 4:22-cv-10335. (ECF No. 61). The defendants in this consolidated case are: Wellpath, NaphCare, Wayne County, FNU Freeman

_____

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

(Freeman), and Sheriff Raphael Washington (Washington).  Harrison, a pretrial detainee at the Wayne County Jail (WCJ) at all relevant times,[2] alleges that defendants were deliberately indifferent to his serious medical needs regarding back pain, mental health medication, and dental issues, and that defendants are liable for state created danger by placing him with a dangerous cellmate.  (ECF No. 1; ECF No. 7 in Case No. 22-10335).

On October 29, 2023, defendants filed three separate motions for summary judgment.  (ECF No. 68 by NaphCare and Wayne County; ECF No. 69 by Washington; ECF No. 73 by Wellpath, Wayne County, and Freeman).  The motions are fully briefed, (ECF Nos. 93, 97, 98, 99), and ready for consideration. For the reasons that follow, the undersigned RECOMMENDS that defendants' motions be GRANTED IN PART and DENIED IN PART.  Defendants are entitled to summary judgment on Harrison's claims regarding medications, back pain, and state-created danger, but not regarding his dental health claims.  Freeman should be granted judgment on all claims.

If this Report and Recommendation (R&R) is adopted, Harrison's dental care claims will continue against NaphCare, Wayne County, Wellpath, and Washington.

---

[2] Harrison is now housed at the Parnall Correctional Facility.

II.     Background

A.     Procedural Posture

On January 27, 2002, Harrison filed his first complaint.  (*Harrison I*).  This complaint contained allegations regarding inadequate treatment of back pain and mental health at WCJ as well as the claim that he was housed with a dangerous cellmate who sexually assaulted him.  (ECF No. 1).

On February 14, 2022, Harrison filed another complaint regarding his conditions of confinement at WCJ.  (*Harrison II*).  (ECF No. 1, Case No. 22-10335).  This complaint was related to inadequate dental care.  (*Id.*).  On May 11, 2022, he filed an amended complaint.  (ECF No. 7, Case No. 22-10335).

NaphCare moved to consolidate the two cases.  (ECF No. 57).  The motion was granted on June 30, 2023.  (ECF No. 61).  Shortly thereafter, an attorney filed an appearance on behalf of Harrison.  (ECF No. 64).  Defendants filed their motions for summary judgment on August 29, 2023.  (ECF Nos. 68, 69, 73).  Plaintiff's counsel then moved to withdraw, which was granted on November 30, 2023.  (ECF No. 81).  The Court then extended the time for Harrison to respond to defendants' motions, (ECF No. 87), and he filed his response to all three motions on January 9, 2024, (ECF No. 93).  Defendants timely replied.  (ECF Nos. 97, 98, 99).

3

B.     Summary of the Allegations

1.     *Harrison I* - Case No. 22-10187

In broad terms, Harrison alleges that from December 2019 to September 2021, Wellpath failed to distribute his evening psychiatric medications on multiple occasions.  (ECF No. 1, PageID.8).  He said that this problem became even worse after NaphCare began performing healthcare services for WCJ, and that he only received his evening medications approximately half of the time under NaphCare. (*Id.*).  Harrison, who suffers from bipolar depression, panic attacks, and generalized anxiety disorder, was prescribed Remeron and Vistaril for these conditions at WCJ, and alleges that he did not receive medications on December 3, 2019, on five occasions in August 2021, on several occasions in October 2021, and on at least ten occasions in December 2021.  (*Id.*, PageID.9).  Later in the complaint, he alleges that missed medications continued into January 2022.  (*Id.*, PageID.11).

Harrison says that Wellpath and NaphCare often failed to distribute medications to his entire floor at WCJ, and that when he did not receive his medication, he not only suffered from his mental impairment symptoms, but also withdrawal symptoms, including pain, nausea, and disorientation.  (*Id.*, PageID.9). He alleges that while this was not based on an official policy by Wellpath, NaphCare, or Wayne County, it was a systemic failure and a well-established,

4

widespread practice that defendants were well aware of.  (*Id.*).

Harrison also alleges that his back pain, caused by chronic back problems, was inadequately treated at WCJ.  (*Id.*, PageID.10).  Outside of jail, Harrison was prescribed Naproxin and Flexeril for this, but at WCJ he was treated only with Tylenol and ibuprofen.  (*Id.*).  He was also "educated" on back pain in lieu of treatment, and while he was granted an extra mattress detail to supplement the "paper-thin" mattress he was provided, his extra mattress was often taken away by WCJ staff and only returned after several weeks or months.  (*Id.*).

As to the state-created danger, Harrison alleges that he was forced to room with unmedicated schizophrenic detainees on two occasions, once on November 20, 2021, and once from December 10 to 13, 2021.  (*Id.*, PageID.11).  On December 13, 2021, Harrison was allegedly sexually assaulted by a schizophrenic detainee named "Bazzi" after having complained for the past three days about being housed with Bazzi, who had not been given his medications during that time. (*Id.*, PageID.12).  After the assault, guards locked Bazzi down in Harrison's cell to keep Harrison safe, but Bazzi continued to threaten Harrison's life and went through Harrison's belongings.  (*Id.*, PageID.12-13).  Harrison was finally moved to a different cell six hours later.  (*Id.*).  Harrison filed a grievance about the issue, but WCJ determined that he lied about the events.  (*Id.*, PageID.13).

On February 13, 2023, multiple defendants were dismissed from the case,

leaving Wellpath, NaphCare, Washington, and Wayne County as the remaining defendants prior to consolidation with *Harrison II*.  (ECF No. 50).

## 2.  *Harrison II* - Case No. 22-10335[3]

In the amended complaint of Harrison's second case, he alleges that Wellpath, NaphCare, Wayne County, and Washington were deliberately indifferent to his dental health needs while at WCJ.  (ECF No. 7).  Harrison alleges that he lost a filling on his rear, upper left molar in December 2019, that the tooth eventually cracked, and that he never received treatment.  (*Id.*, PageID.44).  On January 16, 2022, a second tooth broke, and the WCJ dentist failed to notice the decay on that tooth while informing him that nothing could be done regarding his other dental issues.  (*Id.*).

In June or July of 2020, the WCJ dentist informed Harrison that because WCJ was a "short term facility," it only offered tooth extraction to remedy dental issues.  (*Id.*, PageID.45).  Harrison asked if he could pay to have other dental work done while interred but was informed that he would have to wait until he was released to have such work done.  (*Id.*).  His untreated molar began causing him excruciating pain by December 2020, and he was offered nothing but Tylenol, which did little to relieve the pain.  (*Id.*).  He was unable to sleep and began to apply hot sauce to the tooth to numb the pain.  (*Id.*).

---

[3] Record citations in this section are from Case No. 22-10335.

In June 2021, he saw the dentist for a second time, by which point his molar required a root canal or extraction, and Harrison opted to wait until he was released because WCJ would not perform a root canal.  (*Id.*).  By the fall of that year, Harrison had also developed cavities on two frontal teeth that were so large he could feel them with his tongue.  (*Id.*, PageID.46).  WCJ would not treat these cavities either, unless Harrison wanted the teeth pulled.  (*Id.*).  Freeman's involvement was not implicated in the complaint, but appears to be regarding the denial of grievances related to Harrison's dental care.

On June 30, 2023, an order was entered consolidating this case (*Harrison II*) with Case No. 22-10187 (*Harrison I*), in which all subsequent filings were made. (ECF No. 48).

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Harrison is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV.    Analysis

A.    Direct and Vicarious Liability

1.    Standard

It is well-established that liability under § 1983 must be based on more than

merely the right to control employees.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-26

(1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

To make out a claim under § 1983, Harrison's "allegations must demonstrate that

each defendant [ ], through his or her own individual actions, *personally violated*

[his] rights." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in

original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "It is well-settled that

[g]overnment officials may not be held liable for the unconstitutional conduct of

their subordinates under the theory of respondeat superior." *Peatross v. City of

Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted).

When the acts of individual employees represent a municipal custom or

policy, a municipal defendant can be held liable for the underlying acts.  *Id.* at 690-

92.  Private defendants like Wellpath and NaphCare can be held liable as well

when they contract with the State to perform a traditional state function.  *Hamer v.

Wellpath*, No. 2:22-CV-12500, 2022 WL 16744370, at *4 (E.D. Mich. Nov. 7,

2022).  Such a claim can be made where a plaintiff alleges one of the following:

"(1) the existence of an illegal official policy or legislative enactment; (2) that an

9

official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

### 2.    Harrison's Claims

#### a.    Dental Care

Regarding Harrison's dental claims, defendants do not seem to argue that his claims are based on WCJ policy as implemented by Wellpath and NaphCare.  The record reflects that Harrison was told on multiple occasions that WCJ had an "extraction only" policy regarding dental care, due to being a short-term facility, (ECF No. 68-1), and this policy is reflected in the affidavit submitted by WCJ dentist Roxanne Pryor, D.D.S., (ECF No. 68-2).  As such, this claim meets the *Monell* requirements for stating a claim against municipal entities and will be analyzed below on its merits.

#### b.    Housing

Harrison's claim regarding being housed with dangerous individuals does not meet these requirements.  It appears that Harrison intended to state a claim on these grounds against Corporal Taylor, who has since been dismissed from the case.  As to Wayne County, Harrison has not alleged or shown that there was a policy, practice, or custom of housing detainees with dangerous or unmedicated

cellmates.  He alleges two instances of this occurring, only one of which caused

him harm.[4]  Therefore, defendants should be granted judgment on this claim, as

they were not personally liable for Harrison's deprivation.

<div align="center">c.    Missed Medication</div>

Harrison's claims regarding missed medications and back pain are closer

questions.  Defendants argue that the missed medications were sporadic and that

many were due to Harrison refusing medication.  Harrison says that he never

declined mental health medication, and the record at ECF No. 68-1 reflects a

potential ongoing practice of failing to handout medications on a consistent basis.

Similarly, though Harrison was given an extra mattress detail to help with his back

pain, he alleges that it was commonly removed from his cell and would not be

returned for weeks or months.  There is little evidence on either side of this issue.

Although these are close issues on *Monell* grounds, defendants are entitled to

judgment on the merits of both claims, as will be discussed below.  Therefore, the

undersigned does not recommend judgment based on failure to state a *Monell*

claim regarding Harrison's medications or back pain.

<div align="center">d.    Freeman</div>

As to Freeman, Harrison fails to allege her personal involvement in his

---

[4] In his reply, Washington argues that the incident did not happen at all, as
reflected in the response to Harrison's grievance.  (ECF No. 98).

alleged deprivations. Although Freeman responded to several of Harrison's grievances, (ECF No. 73-2, PageID.1145-1163), "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). As this appears to be Freeman's only role based on the allegations and record evidence, Freeman is entitled to summary judgment on all of Harrison's claims.

### B. Deliberate Indifference

#### 1. Standard

"The standard in this circuit to prove a deliberate-indifference claim brought under the Fourteenth Amendment by a pretrial detainee is clear." *Grote v. Kenton Cnty., Ky.*, 85 F.4th 397, 405 (6th Cir. 2023). "To make out such a claim, a plaintiff must demonstrate (1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.' " *Id.* (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (internal quotation marks and citation omitted)). "Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee." *Id.* (citing

12

*Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023)).

"[T]he level of culpability with which a defendant must act to establish deliberate indifference to pretrial detainees is lower than that necessary for convicted incarcerated individuals." *Id.* (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021), *cert. denied*, —— U.S. ——, 143 S. Ct. 84, 214 L. Ed. 2d 13 (2022)). "This is so because a pretrial detainee's claims derive not from the Eighth Amendment, with its focus on punishment, but instead from the Fourteenth Amendment, which can be violated without respect to an official's state of mind." *Id.* (citation omitted). "Contrary to deliberate-indifference claims brought under the Eighth Amendment, which requires both an official's awareness of facts suggesting a likelihood of substantial harm to an incarcerated person and an official actually connecting such facts to an inference of harm, a pretrial detainee need only prove something akin to reckless disregard to satisfy the second element of a deliberate-indifference claim." *Id.* (internal quotation marks and citation omitted).

2.    Application

a.    Dental Care

The record shows that Harrison had a litany of dental health issues during his stay at WCJ.  Although he did not complain about dental issues at intake on August 17, 2019, (ECF No. 73-1, PageID.869-876), he suffered a broken tooth in

April 2020, (*id.*, PageID.980), for which he was prescribed Tylenol and Ibuprofen, (*id.*, PageID.984-991).  At that point Harrison had been at WCJ for eight months; for the next two plus years, he continued to have issues with that tooth and others at WCJ and was only offered pain management and extraction of teeth that were beyond repair.  (*Id.*, PageID.1006-1011, 1040-1044, 1048-1049, 1052-1055, 1059, 1086-1090, 1092, 1105, 1108, 1115-1118; ECF No. 68-2).  He was continually informed that WCJ does not perform restorative dental work or repair fillings. (*Id.*).  He finally had one tooth extracted on January 17, 2023, (ECF No. 68-2, PageID.628), and records Harrison submitted to the Court from October 9, 2023, (shortly after he was released to prison) show that another tooth had been extracted since and that three more teeth were "non-restorable," (ECF No. 93, PageID.1288, 1322-1323).

Defendants argue that WCJ's "extraction only" policy falls under the umbrella of disputes "over the adequacy of the [detainee's] treatment," which "federal courts are generally reluctant to second guess[.]"  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  This was the result reached by one Western District of Michigan court, which stated,

> The Sixth Circuit has concluded that there are circumstances where the failure to provide a root canal and crown, as opposed to extraction, might evidence deliberate indifference: (1) if the decision maker were seeking to enrich themselves, i.e., "because an extraction would pay them more than another treatment option"; or (2) if the refusal of the root canal option "interfered with prescribed medical treatment."

14

> *Walker v. Washington*, No. 21-1446, order at p. 4 (6th Cir. Dec. 14,
> 2021).  But neither of those circumstances are present here, nor has
> Plaintiff alleged that they are present.

*Justice v. Beaumont*, No. 1:22-CV-1179, 2023 WL 236534, at *4 (W.D. Mich. Jan.

18, 2023).

The *Justice* court noted that many other courts had reached the same

conclusion, that favoring extractions over root canals is not unconstitutional.  *Id.*

(citing *Leachman v. Harris Cnty, Texas*, 779 F. App'x 234, 238 (5th Cir. 2019)

("We have concluded a prisoner failed to state a claim under the Eighth

Amendment based on the jail's provision of 'extraction of his injured teeth' rather

than 'more expensive restorative treatment.' "); *Matthews v. Raemisch*, 513 F.

App'x 605, 607 (7th Cir. 2013) ("Ajala argues that the district court erred by

granting summary judgment on his claim of deliberate indifference to his infected

tooth because the prison refuses to provide him with a root canal procedure.  The

district court correctly found that the prison is offering him an extraction procedure

and that this dispute is over nothing but the choice of one routine medical

procedure versus another."); *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 196-97

(3rd Cir. 2007) (concluding that, where plaintiff favored root canal over extraction,

plaintiff raised "merely . . . a disagreement over the proper course of his treatment

and thus failed to allege a reckless disregard with respect to his dental care");

*Ciaprazi v. Jacobson*, No. 13 Civ. 4813, 2016 WL 4619267, at *4 n.4 (S.D.N.Y.

Sept. 6, 2016) (noting that courts have upheld policies that offer only extraction—and decline to pay or provide for root canals and crowns—in numerous jurisdictions and citing cases).

Harrison argues that the cases cited by defendants are distinguishable. He has alleged that he required new fillings or repairs of existing fillings on several teeth since arriving at WCJ. (Case No. 22-10335, ECF No. 7, PageID.44-45). He was told that WCJ would not fill cavities or repair faulty fillings, only pull teeth, and was advised to seek fillings and repairs on release. (*Id.*, PageID.45). This was in December 2019. (*Id.*). By June 2021, the condition of his left upper molar had deteriorated to the extent that it required either a root canal or extraction. (*Id.*). By fall 2021, that molar had cracked and partly broken off to the gumline; cavities on two frontal teeth had grown large enough that Harrison could feel them with his tongue. (*Id.*, PageID.46).

Harrison was repeatedly advised to seek dental care upon his release from WCJ, (ECF No. 68-2, Affidavit of Roxanne Pryor, D.D.S.), but he was not released until May 16, 2022, for a limited period of house arrest, (*id.*). Harrison returned to WCJ On October 31, 2022. (ECF No. 68-3, PageID.638, Harrison Deposition). In the interim, Harrison went to his dentist "about five times" and "the damage was extensive." (*Id.*). He received a root canal and crown on one tooth and was supposed to get other fillings, but did not have the two originally troublesome teeth

16

treated because they had become completely unsalvageable.  (*Id.*).  He was unable to have other cavities filled before his return to WCJ.  (ECF No. 93, PageID.1298). He reported problems with those teeth to WCJ dental, but fillings were not provided.  (*Id.*).  By the time he was released to a Michigan Department of Corrections facility, an October 9, 2023 examination showed that Harrison had five non-restorable teeth.  (*Id.*).

Courts in this Circuit have found that delayed or denied dental care can give rise to a deliberate indifference claim.  *See, e.g.*, *Sedore v. Mich. Dep't of Corr.*, No. 2:21-CV-13006, 2022 WL 141856, at *2 (E.D. Mich. Jan. 14, 2022) (concluding that inmate deprived of toothpaste for 337 days and experiencing dental health problems could proceed on deliberate indifference claim); *Prichard v. Mich. Dep't of Corr.*, No. 2:20-CV-12844, 2021 WL 698190, at *2 (E.D. Mich. Feb. 23, 2021) (determining that claim against dentist could proceed where the plaintiff was denied fillings for cavities for over three years); *Carver v. Knox Cnty., Tenn.*, 753 F. Supp. 1370, 1391 (E.D. Tenn. Jan. 25, 1989) (concluding that inmate with abscessed tooth who was not treated for 88 days suffered constitutionally deficient treatment), *aff'd in part, rev'd in part on other grounds*, 887 F.2d 1287 (6th Cir. 1989).

In the Sixth Circuit, "[d]ental needs fall into the category of serious medical needs because dental care is one of the most important needs of inmates."  *Flanory*

*v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *McCarthy v. Place*, 313 F.

App'x 810, 814 (6th Cir. 2008)) (internal quotation marks omitted).  "Nevertheless,

not all dental problems constitute serious medical needs."  *McCarthy*, 313 F. App'x

at 814.  "Rather, '[a] cognizable claim regarding inadequate dental care, like one

involving medical care, can be based on various factors, such as the pain suffered

by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the

inability to engage in normal activities.' "  *Id.* (quoting *Chance v. Armstrong*, 143

F.3d 698, 703 (2d Cir. 1998)).

> The Second Circuit has explained the issue with leaving cavities untreated

for too long.

> Ordinarily, a tooth cavity is not a serious medical condition, but that is
> at least in part because a cavity is so easily treatable.  Absent intense
> pain or other exigency, the treatment of a cavity (in or out of prison)
> can safely be delayed by the dentist's schedule or the patient's dread or
> neglect, can be subject to triage or the management of care, can be
> mitigated or repaired temporarily, and can be coordinated with other
> related conditions that need to be treated together.  Nevertheless, a tooth
> cavity is a degenerative condition, and if it is left untreated indefinitely,
> it is likely to produce agony and to require more invasive and painful
> treatments, such as root canal therapy or extraction. . . .  Consequently,
> because a tooth cavity will degenerate with increasingly serious
> implications if neglected over sufficient time, it presents a "serious
> medical need" within the meaning of our case law.

*Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000).

> Although *Justice* and other cases allow for "extraction only" policies where

the alternative is a root canal and crown, there is no authority suggesting that

cavities and broken fillings may be left untreated until the tooth decays to the point of requiring root canal or extraction.  To the contrary, inadequate dental care that results in pain, tooth deterioration, and interference with normal activities is cognizable as deliberate indifference to serious medical needs.  *McCarthy*, 313 F. App'x at 814.  Applying this standard, the *Prichard* court found that a prison offering extraction of teeth that needed fillings would not be providing constitutionally adequate care.  2021 WL 698190, at *2.

Harrison's allegations are quite similar to the plaintiff's in *Prichard*, in that both suffered a lack of dental care for cavities for over three years of detention resulting in tooth deterioration.  Although *Prichard* was a ruling on the defendants' 12(b)(6) motions, the evidence before the Court on these defendants' summary judgment motions bears out Harrison's allegations.  There is no dispute that Harrison had cavities and broken fillings while at WCJ and that WCJ offered no solutions other than pain pills and tooth extraction.  The dispute is a legal one: whether that level of care is adequate for a pretrial detainee.  It is not.  Therefore, the undersigned recommends that defendants be denied summary judgment on Harrison's dental claims.

b.    Missed Medications

Harrison points to the following instances of missed mental health medication from the records submitted by NaphCare, (ECF No. 93, PageID.1284):

19

In 2021, Remeron was not passed out on October 2, 4, 5, 16-18, 20-22, 24-25, (ECF No. 68-1, PageID.377, 381-82); November 7, 10, 23, 24, 27, 30, (*id.*, PageID.384-388); and December 23, 24, 27, 28, 31, (*id.*, PageID.388-389). In 2022, Remeron was missed on January 1-3, 5, 6, 8, 10, 12, 17, 29, (*id.*, PageID.388-391); February 6-8, 12-16, 18, 24, (*id.*, PageID.392-395); March 1, 11, 23, 25, (*id.*, PageID.396-398); April 3, 11, 13-15, 28, (*id.*, PageID.400-403); and May 8 and 9, (*id.*, PageID.404-405). Harrison says that he never refused or failed to show up for medications. (ECF No. 93, PageID.1284).[5]

Wellpath disputes this statement, citing records that Harrison refused medication on September 22 and 24, 2019, (ECF No. 73-1, PageID.898-899), November 4, 12, and 20, 2019, (*id.*, PageID.923, 926), December 20, 2019, (*id.*, PageID.993, 941), February 6 and 20, 2020, (*id.*, PageID.964), On October 25 and 31, 2020, (*id.*, PageID.1022), on over twenty occasions in November 2020, (*id.*, PageID.1028), and on December 2, 2020, (*id.*, PageID.1030). NaphCare references its records as well, stating that Harrison refused medications at various instances, but only one was for Remeron, on November 11, 2020. (ECF No. 68-1,

---

[5] Harrison also takes issue with the prescriptions and dosages he was given for his mental health impairments; however, these allegations are not part of the complaint. Even if they were, it would fall under the ambit of a disagreement over medical treatment, which does not rise to the level of a constitutional violation. *See, e.g.*, *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863, 870 (E.D. Mich. 2003).

PageID.421).  The rest were for vitamins or Tylenol.  (*Id.*, PageID.421-462).

There are clearly many instances of missed mental health medication that were not based on Harrison's refusal of medication.  However, to satisfy the objective component of a deliberate indifference claim, Harrison must show the existence of a " 'sufficiently serious' medical need."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "To satisfy this component, [Sixth Circuit] cases have sometimes required a plaintiff to introduce verified medical evidence showing that a defendant's actions caused a serious medical harm."  *Daniels v. Tharp*, No. 19-3190, 2020 WL 13561351, at *3 (6th Cir. June 22, 2020) (citations omitted).  "The question whether a plaintiff must include this evidence depends on the type of claim that the plaintiff alleges."  *Id.* (citing *Blackmore*, 390 F.3d at 896-900).

Harrison argues that his claim falls under *Blackmore*, in which the Sixth Circuit stated that the "verifying-medical-evidence requirement 'does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers.' "  *Id.* (quoting *Blackmore*, 390 F.3d at 898).  " '[V]erifying medical evidence' is not necessary to survive summary judgment if a prisoner 'exhibit[s] obvious manifestations of pain and injury' such that 'even a layperson would easily recognize' a need for immediate treatment."  *Id.* (quoting *Blackmore*,

390 F.3d at 899).

Such manifestations are not apparent in the record.  Furthermore, the Sixth Circuit generally requires verifying medical evidence in instances of delayed or missed medication.  *See id.*; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001); *Martin v. Warren Cnty.*, 799 F. App'x 329, 335, 338-39 (6th Cir. 2020); *Morabito v. Holmes*, 628 F. App'x 353, 354, 358-59 (6th Cir. 2015); *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 774-75, 778-79 (6th Cir. 2012).  Therefore, for Harrison to make out a claim of deliberate indifference for having missed his mental health medications on multiple occasions sufficient to survive summary judgment, he would need to have submitted medical evidence of an ensuing serious medical harm.  He has not.  Thus, the record does not contain enough evidence to show a genuine issue of material fact on this claim.  As such, defendants are entitled to summary judgment on his missed medications claim.

c.     Back Pain

Harrison's remaining claim[6] is that defendants were deliberately indifferent to his back pain by failing to ensure that he was properly medicated and consistently provided with his extra mattress detail at WCJ.

The record reflects that Harrison complained of back pain on many

---

[6] In his response, Harrison argues that he has a claim of deliberate indifference to sleep apnea.  (ECF No. 93, PageID.1286-1287).  However, this issue is not alleged in either complaint.  Therefore, the undersigned will not address it.

occasions, beginning with a September 16, 2019 kite[7] requesting "Naproxin or

another NSAID [non-steroidal anti-inflammatory drug] and/or muscle relaxer" for

"intense back pain." (ECF No. 73-1, PageID.897). On October 4, 2019, Harrison

was prescribed Naproxen 500 mg twice per day for his pain. (*Id.*, PageID.903).

This order was renewed on October 8, 2019, (*id.*, PageID.904), and again on

January 27, 2020, after Harrison complained again of back pain, (*id.*, PageID.943,

947).

Harrison complained again on March 22, 2021, of back pain and was

evaluated on April 9, 2021. (*Id.*, PageID.1063, 1071-1073). During his

evaluation, Harrison said his pain was a seven out of ten, and he had pain,

tenderness, muscle spasms, and an impaired range of motion. (*Id.*). He was

prescribed Tylenol Extra Strength 500 mg, twice per day. (*Id.*, PageID.1084). On

May 6, 2021, Harrison submitted a sick call request for an extra mattress, and his

Tylenol 500 mg prescription was renewed. (*Id.*, PageID.1100-1101). The next

day, and again on May 19, 2021, Harrison submitted complaints regarding his

lower back, side, and hips. (*Id.*, PageID.1102-1103). He requested an extra

mattress again on June 4, 2021, saying that his mattress was approved but had been

---

[7] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance. *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

23

taken from him during a "shakedown." (*Id.*, PageID.1113).  The response noted that his extra mattress had been ordered and the complaint was considered resolved.  (*Id.*).  The next day, Harrison requested paperwork so that it would not be taken from him again, and the entry states that his detail would be added to custody's system.  (*Id.*, PageID.1114).  His Tylenol prescription was renewed on June 24, 2021, and again on September 20, 2021.  (*Id.*, PageID.1122, 1139).

The evidence does not reflect that Harrison had a serious medical need regarding back pain, nor that defendants recklessly failed to act reasonably to mitigate the risk it posed.  Regarding the serious medical need, common back pain will not often rise to this level under Sixth Circuit precedent.

> As a matter of law, plaintiff's back pain was not a "serious medical need" under the applicable legal standards. . . .  The objective findings, both by defendants and subsequently by Dr. Urban, showed nothing abnormal except for muscle spasms. . . .  Like millions of other people, plaintiff had low back pain, plain and simple.  Certainly there is nothing to suggest that plaintiff's back condition was so dire "that even a lay person would easily recognize the necessity for a doctor's attention," *Blackmore*, 390 F.3d at 897, or that a failure to provide immediate attention by a physician would pose "an excessive risk to inmate health or safety." *Woods* [*v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997)].

*Murphy v. Grenier*, No. CIV A 07-CV-15248-DT, 2009 WL 1044832, at *5 (E.D. Mich. Apr. 20, 2009), *aff'd*, 406 F. App'x 972 (6th Cir. 2011).

Additionally, Harrison's back pain was not ignored by his treaters, and was not inadequate on the face of the record.  While it is regrettable that his extra mattress detail was ignored at times by WCJ staff, attempts to correct the issue

were made.  Harrison was prescribed pain medication in response to every

complaint.  Based on this, the record would require "expert medical evidence

describing what a competent doctor would have done and why the chosen course

was not just incompetent but grossly so." *Phillips v. Tangilag*, 14 F.4th 524, 536

(6th Cir. 2021).  Here, as in *Phillips*, summary judgment for the defendants on

Harrison's back pain claims is appropriate, because Harrison has failed to make

that showing.

### d.    Qualified Immunity

Washington argues that he is entitled to qualified immunity on Harrison's

claims, because he did not violate any of Harrison's clearly established rights.

### 1.    Standard

Qualified immunity "is an immunity from suit rather than a mere defense to

liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It gives officials

"breathing room to make reasonable but mistaken judgments and protects all but

the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*,

571 U.S. 3, 6 (2013) (punctuation modified).  After a defending official initially

raises qualified immunity, the plaintiff bears the burden of showing that the official

is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th

Cir. 2013).

When determining whether an official is entitled to qualified immunity, the

Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* at 472. The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

## 2.    Application

Washington is entitled to qualified immunity on Harrison's claims for his missed medications, state-created danger, and back pain because, as explained above, he has failed to establish a constitutional violation for these claims. As to the dental care claim, the need for inmates (whether prisoners or pretrial detainees) to have access to dental healthcare is well-established in the Sixth Circuit. *See Flanory*, 604 F.3d at 253; *McCarthy* 313 F. App'x at 814. These standards have been consistently applied by courts in this district to require treatment of cavities and prevention of tooth decay. *See Sedore*, 2022 WL 141856, at *2; *Prichard*, 2021 WL 698190, at *2. Washington's reliance on cases upholding "extraction only" policies when faced with teeth requiring extraction or root canal does not shield him from liability. As explained above, these cases do not excuse his failure to allow other forms of dental care for cavities and broken fillings. Thus, the

constitutional rights at issue are clearly established, and Washington's request for qualified immunity should be denied.

## V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motions, (ECF Nos. 68, 69, 73), be GRANTED IN PART and DENIED IN PART.  Defendants are entitled to summary judgment on Harrison's claims regarding medications, back pain, and state-created danger, but not regarding his dental health claims.  Defendant Freeman should be granted judgment on all claims.

If this R&R is adopted, Harrison's dental care claims will continue against NaphCare, Wayne County, Wellpath, and Washington.

Dated: February 13, 2024              s/Kimberly G. Altman
Detroit, Michigan                     KIMBERLY G. ALTMAN
                                      United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 13, 2024.

<div style="margin-left:40%">

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
</div>